## EMPLOYER'S DUTY AS TO SAFETY OF PLACE TO WORK.

Circuit Court of Cuyahoga County.

THE L. S. & M. S. RAILWAY CO. v. MARTHA LATTO, ADMINISTRATRIX.

Decided, December 17, 1909.

*Misconduct of Counsel—Comment on Matters Not in Evidence—Negligence—Duty of Employer—Charge.*

1. Misconduct of counsel in commenting upon matters not in evidence, without admonition of the court or retraction by counsel, is reversible error.

2. In an action for wrongful death it is error to charge the jury that it is the duty of the employer to furnish a safe place to work and suitable tools for carrying on the work. Ordinary care is the measure of this duty.

*Cook, McGowan & Foote,* for plaintiff in error.
*T. S. Dunlap* and *Harry Payer,* contra.

HENRY, J.; WINCH, J., and MARVIN, J., concur.

In this action for wrongful death, the sole issue below was upon the alleged negligence of the defendant company, which is plaintiff in error here. The death was caused by the explosion of the mud-drum of a horizontal tubular steam boiler.

This mud-drum was a sediment tank, located near the ground at one end of the boiler proper, and suspended from the headers by means of a series of nipples, or short tubes, about five inches long and four and a half inches in diameter. All these parts

were, when in use, subjected internally to the full steam pressure of the boiler itself.

About a fortnight before the accident, a leak was discovered at one or more of the nipples, and the entire series was replaced.

The mud-drum was blocked up and each nipple when fitted into its proper place, was rolled into snug union with both the header above and the mud-drum seat below by means of a dudgeon roller inserted therein from the top. A manhole in the header afforded access for this purpose.

The dudgeon roller is a hollow cylindrical steel capsule with three pockets, each of which contains a small, solid steel roll attached. These rolls may be made to partially protrude through apertures in the side of the tool by driving vertically through it a tapering pin, which, coming into contact with the rolls through corresponding interior apertures, drives them apart. The three rolls are thus brought to bear forcibly against the interior surface of the tube into which the tool is inserted, and when the pin is turned by means of the handlever attached to its top by a toggle joint, the rolls are revolved by the friction so as to produce a slight expansion of the tube at the plane or place of contact.

The tool has a collar at the top which rests on the upper edge of the tube, and by proper adjustment the rolls can be brought to bear at any desired level within the tube. When in use, the small rolls are necessarily tilted outward at the top by the taper of the pin which separates them.

The expansion produced by them is therefore greatest at the top, and when adjusted with their upper edges exactly opposite the plane of contact between the nipple and its seat, a steam proof union can be made. If adjusted a trifle higher, a steam proof union with slight shoulder above it can be rolled in a single operation. But, because of the tilt of the rolls when in use, a steam proof union with a shoulder below it, requires two adjustments, one with the upper edges of the rools exactly opposite the union, and another immediately below it. If, however, the rolls instead of being cylindrical are in the form of a cone frustum, the slant of which offsets the taper of the pin, the oppo-

site result may be produced. The shoulders, if any, in these nipples should of course have been above the upper union, and below the lower one, for greater security in keeping the nipples from detachment under pressure of the steam within. To produce such shoulders by means of an expanding tool having cylindrical rolls, as already shown, three adjustments were necessary, one at the top and two at the bottom.

In this case the roller was of this sort, but only two adjustments were made in rolling each nipple. The workman who used it was but slightly experienced in this particular kind of work. The hydrostatic test applied to the boiler when the job was done, and the fortnight's use of it, prior to the explosion, showed that he had indeed rolled steam tight unions; but there were no shoulders in the nipples below the mud-drum seat, for none could have resulted from his manner of doing the work. Right there is where the rupture apparently originated, most of the nipples being detached from the mud-drum.

Expert evidence offered by the defendant indicates that the nipples should have held without the aid of any shoulder and a latent flaw in the casting of the iron mud-drum is suggested as a possible alternative explanation of the explosion. But we think that the jury were warranted in finding, as the most probable cause, a negligent failure to roll shoulders in the nipple just below the mud-drum seat.

2. We have carefully examined the assignments relating to the amount of the verdict and the admission and rejection of testimony, and we find no error in those respects.

3. Misconduct of counsel for plaintiff in argument to the jury and otherwise is also assigned as error. There was strong and apparently indefensible provocation for most of the misconduct complained of. But the following excerpt from the bill of exceptions, pages 469, 470, can not thus be passed over:

"Have they tried to conceal anything from you? Have they objected when testimony was being elicited from witnesses on the stand? Had they offered testimony in those two books, we couldn't have done it.

"MR. FOOTE: Let the record show that at this point counsel holds up two 'locomotive' books with the statement that the de-

fendant excluded the evidence from those books, and the infer-
ence which counsel seeks to draw from them, and that counsel
for defendant objects and excepts to that kind of talk, and
asks the court to rule on it.

"Mr. Payer: You may let the record show, for I desire to
have it appear in the record, that when you offered the testimony
from these books and read it into the record you had those iden-
tical books in your hand and offered certain pages from them.
You offered in the issue of 1906 and 1907 from page 164 and
from page 114 from the issue of 1881. I can not show you what
is in the books, gentlemen, because if I did there would be an
exception—

"Mr. Foote: I except to these remarks of counsel.

"Mr. Payer: Not like the one he is making now, for they
don't count for anything, but if I would show you what is in
these books, they would take an exception, and that would be
error, and I haven't any right to show you what is in them.

"Mr. Foote: I except to that kind of talk, as to what is in
these books.

"Mr. Payer: You will remember this one thing, gentlemen,
that he has taken the books and extracted from them certain
things that he has dictated to the stenographer, given you cer-
tain details of tests, and that he has given you nothing else from
the books; that he has submitted those propositions to you just
as he has submitted to you the testimony of Mr. Woodward and
the other witnesses by picking out for you the passages that
might be misleading and omitting all the rest, and the gentle-
man says he is fair."

In thus commenting upon what was not in evidence there was
misconduct of counsel, which, when objected to, should have
been, but was not, rebuked by the court. This we hold is re-
versible error. See *Hayes* v. *Smith,* 62 O. S., 162, wherein the
seventh paragraph of syllabus is:

"For counsel, in the course of argument to the jury, to charge
the opposite party with deliberate purpose and effort to sup-
press the truth, and with having hired an attorney for that
purpose, without justification in the evidence, or to state or
assume facts matters which are not in evidence or to comment
on testimony which has been ruled out, is an abuse of privilege,
and which is misconduct for which a new trial should be
granted."

4.   In the charge of the court, at page 478 of the bill of exceptions occurs this language:

"It is the duty of the defendant company in this case to provide a suitable and reasonably safe place for its workmen to work, and in providing that suitable and ordinarily safe place, they must exercise ordinary prudence, such prudence as people of ordinary discretion and prudence would exercise under like circumstances.   They must provide suitable tools for the carrying out of the work that is to be accomplished.   They must provide a reasonably safe place for its laboring men, its employes to work."

Ordinary care is the measure of the duty.   Failing thus to qualify all the language used here as to the employer's duty, was error.   C. H. & D. Ry. Co. v. Frye, 80 Ohio St., 289; and see also Von Quiram v. Cleveland City Ry. Co., 54 Bull., 472.

For these errors the judgment is reversed and the cause remanded.